## SMALLWOOD v. McGRAW.

### No. 8811.

Circuit Court of Appeals, Eighth Circuit.

June 26, 1930.

Charles Burke Elliott, of Minneapolis, Minn. (Elliott, Coursolle & Kelly, of Minneapolis, Minn., and J. A. Cashel, of Worthington, Minn., on the brief), for appellant.

Fred W. Putnam, of Minneapolis, Minn. (Frank W. Shaw, Orren E. Safford, Wilbur D. Shaw, and Matthew J. Levitt, all of Minneapolis, Minn., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SCOTT, District Judge.

STONE, Circuit Judge.

This is an action for specific performance of a contract. The defendants were "Worthington Telephone Exchange Company, a partnership composed of C. M. Smallwood, J. T. Smallwood, and Mary S. Cashel, C. M. Smallwood and Mildred L. Smallwood, J. T. Smallwood and Blanche M. Smallwood, Mary S. Cashel and John A. Cashel." That is, against the members of a partnership (under the name Worthington Telephone Exchange Company) and the wives and husband of the respective partners. The purpose of the suit was to compel the partnership to convey the property of the Worthington Telephone Exchange Company, which consisted of certain real estate, equipment, apparatus, etc., used in connection with its telephone system.

The court found that two of the partners (J. T. Smallwood and Mary S. Cashel) had not authorized the contract, which had been executed, in the name of the partnership, by C. M. Smallwood. The court determined that

only C. M. Smallwood was bound, and entered a decree requiring him to convey his undivided one-third interest in the real and personal property belonging to the partnership. From that decree, C. M. Smallwood brings this appeal.

Various matters have been argued, but we will determine only one, as that is decisive of this appeal. The decree must be reversed because a condition precedent to the performance by either party has not been and cannot be performed, through no fault of the party upon whom was the burden of performance. This precedent condition was the acquirement by the seller herein for this buyer of rights to purchase two other and differently owned telephone exchanges.

The contract in question was entered into between the assignor of plaintiff and C. M. Smallwood, who purported to act for the Worthington Telephone Exchange. The exchange was a partnership made up of Smallwood, his brother (J. T. Smallwood), and his sister (Mary S. Cashel). The contract was for the purchase of the property belonging to the exchange for $150,000 in cash. Among other provisions of the contract was one that the seller agreed to endeavor to purchase two other telephone exchanges, one located at Slayton and one at Adrian and Ellsworth, at maximum prices set forth in the contract. This provision of the contract contained the following language:

"And this agreement on the part of the purchaser is made subject to the acquiring by the seller for the purchaser of said properties of the Woodgate Telephone System and the Midland Telephone Company, and subject to the approval of the purchaser of the purchases of said properties after its inspection and audit. In the event that the seller shall not acquire said properties for the purchaser or options thereon at approximately the amounts hereinbefore mentioned, or in the event that the purchaser shall not approve said purchases after its inspection and audit, the purchaser shall not be bound by this agreement to purchase the property of the seller. The seller shall be given a period of thirty days from this date in which to negotiate for and acquire the additional properties.

"In the event that said properties are acquired and the purchaser approves the same, the seller agrees to transfer to the purchaser upon payment of the amount herein specified for the Worthington Telephone Exchange, and the assumption of the options or contracts on the additional properties, the entire property of the Worthington Telephone Exchange, as hereinbefore specified by good and sufficient conveyance and Warranty Deed of the real estate, free and clear of all incumbrances, including taxes for the year 1926, and to transfer to the purchaser the contracts or other instruments obtained in connection with the purchase of the additional properties, which contracts provide for the transfer of good title to said properties, free of incumbrances including taxes for the year 1926.

"The purchaser agrees upon purchasing the properties herein mentioned, to employ Mr. C. M. Smallwood in connection with its utility operations at a salary of $3,600.00 per year for one year, and thereafter his employment shall be subject to agreement by the parties."

A portion of the concluding paragraph of the contract is as follows: "It is understood and agreed that upon fulfillment of the undertakings of the seller in this agreement specified, the purchaser will pay for said properties and will accept transfers and possession thereof on January 2nd, 1927."

The contract was extended to afford a longer time in which to acquire the other properties and such extension was "to Jan. 12th, 1927, at which time the same shall terminate unless fully performed by said parties."

From the above-quoted provision in the contract it is clear that both parties contemplated no sale unless and until purchase of the other two exchanges was arranged satisfactorily to this buyer. While the contract is clear and definite as to this, the extension agreement further emphasizes this matter. That extension was for the sole purpose of giving the seller longer time within which to acquire the purchase rights to the two other exchanges. That extension is "to January 12th, 1927" and it is carefully provided that "at which time the same shall terminate unless fully performed by said parties."

It stands undisputed in the record that Smallwood endeavored to acquire these additional properties, but that it was impossible to do so, since one of them was under option to a third party who acted thereon and purchased that property.

Plaintiff claims that this contract became an option contract upon the failure of the seller to acquire the additional properties. We cannot so construe the agreement. There is but one option feature in the contract, and that is that, if the stated audit of the business of the sellers is not found to be substantially

correct, the purchaser shall have the option of canceling the agreement or of purchasing the property with a pro rata reduction of price. Except as to this one feature, this was not an option contract but a contract of purchase and sale with certain conditions precedent named therein.

When the attempts to purchase the two other properties failed and the time limitation in the contract expired, the entire contract fell, leaving no obligation of performance upon any party thereto.

Appellee pleads and gave proof of certain matters which seem intended as a waiver of performance of such condition precedent. Taken at full value, they are insufficient.

The decree is reversed, with instructions to dismiss the petition on the merits for want of equity.